# Case No. 24-40436

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Jeri Pearson; Elizabeth Klem; Ben Homan; Rob Fowler,

Plaintiffs – Appellants

v.

Shriners Hospitals for Children, Incorporated; Shriners Hospitals for Children, Texas; Beverly Bokovitz; Frances Farley; Jerry Gantt; John McCabe; Phillip Grady; Cecile Erwin Young

Defendants – Appellees

**On Appeal from**

United States District Court for the Southern District of Texas
3:23-CV-387

**PETITION FOR REHEARING *EN BANC***

SUBMITTED BY:

David Joseph Schexnaydre
Schexnaydre Law Firm, L.L.C.
2895 Highway 190
Mandeville, LA 70471

# CERTIFICATE OF INTERESTED PARTIES

No. 24-40436; *Jeri Pearson, et al v. Shriners Hospitals for Children, et al*.

For the judges to evaluate possible disqualification or recusal, undersigned certifies the following persons/entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case:

| Appellees: | Counsel for Appellee: |
|---|---|
| Shriners Hospitals for Children, Incorporated; Shriners Hospitals for Children, Texas; Beverly Bokovitz; Frances Farley; Jerry Gantt; John McCabe; Phillip Grady | Daniel Patton and Michael Burke, of Scott Patton PC, Houston, TX |
| **Appellee:** | **Counsel for Appellee:** |
| Cecile Erwin Young | William H. Farrell, of Office of the Attorney General, Austin, TX |

| Appellants: | Counsel for Appellant: |
|---|---|
| Jeri Pearson; Elizabeth Klem; Ben Homan; Rob Fowler | David J. Schexnaydre of Schexnaydre Law Firm, Mandeville, LA |

| Other Interested Parties: | Counsel for Interested Parties: |
|---|---|
| Honorable Jeffrey Vincent Brown, U.S. District Court for the Southern District of Texas. | **District Court Judge Rendering Decision Below** |

*/s/David J. Schexnaydre*
Attorney of record for Appellants

# RULE 35(b)(1) STATEMENT

This case presents questions of exceptional importance: (1) whether a district court can usurp Article II powers by changing a drug's legal classification and the conditions under which investigational drugs are introduced into commerce, thereby overriding the Executive Branch's congressional mandate to prevent nonconsensual use of investigational drugs; and (2) whether the court can wholly reframe Plaintiffs' allegations and accept *Defendants' allegations* as true on a Rule 12(b)(6) motion, violating the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). These issues strike at the heart of the separation of powers and the integrity of federal pleading standards.

This petition should be granted for the reasons stated below.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PARTIES** .................................................. **2**

**RULE 35(b)(1) STATEMENT** ........................................................................ **3**

**TABLE OF AUTHORITIES** ......................................................................... **5**

**STATEMENT OF ISSUES TO MERIT *EN BANC* CONSIDERATION** ......... **6**

**SUMMARY OF FACTS RELEVANT TO REHEARING** ................................ **6**

**STATEMENT OF PROCEEDINGS AND DISPOSITION** ............................ **12**

**ARGUMENT AND AUTHORITIES** .............................................................. **13**

    **Reasons for Granting En Banc Review** .................................................. **13**

    **A.**    **This Court's holding that the subject drugs are vaccines** ............ **13**
          **rather than investigational new drugs creates confusion**
          **about which authority governs—executive or Judicial—and**
          **which laws society must follow. The ruling undermines the**
          **separation of powers by overriding the Executive Branch's**
          **classification and erodes public clarity on legal obligations.**

    **B.**    **This court stripping the Secretary of exclusive and very** ............ **18**
          **broad discretionary authority under 21 U.S.C. § 360bbb-3**
          **("EUA Statute") is the reason for en banc review and implying**
          **that a person volunteering under the statute can mandate that**
          **which Congress expressly prohibits requires en banc review.**

**CONCLUSION** ............................................................................................. **23**

**CERTIFICATE OF SERVICE** ...................................................................... **24**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(b)(2)** ......................... **24**

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................................. 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................... 3, 18

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ........................ 10

*Boysen v. PeaceHealth*, No. 6:23-CV-01229  (D. Or. Aug. 19, 2024) ................. 14

*Brock v. City of Bellingham*, No. 2:24-cv-850 (W.D. Wash. Jan. 21, 2025) ......... 14

*City of Richmond v. J.A. Croson Co.*, 488 U.S. 469 (1989) .................................... 9

*Clinton v. City of New York*, 524 U.S. 417 (1998) ............................................... 13

*Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261 (1990) .................... 17

*Dennis v. Higgins*, 498 U.S. 439 (1991) ........................................................... 11, 12

*Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004) ............................................. 22

*Evergreen Media v. Safran Co.*, 68 F. Supp. 3d 664 (S.D. Tex. 2014) ................. 21

*Giron v. Corrections Corp. of America*, 14 F. Supp. 2d 1245 (D.N.M. 1998) ....... 10

*Health and Hospital Corporation v. Talevski*, 599 U.S. 166 (2023) ..................... 12

*Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625 (5th Cir. 2009) ................... 18

*Koon v. United States*, 518 U.S. 81 (1996) ........................................................ 18

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) ........................................ 13

*Miller v. French*, 530 U.S. 327 (2000) ............................................................... 17

*PHH Mortgage Corp. v. Old Republic*, 80 F.4th 555 (5th Cir., Aug. 30, 2023) .... 18

*Roberts v. Shriners Hospitals*, No. 2:23-cv-0295 (E.D. Wash. Feb. 8, 2024) ........ 13

*Speiser v. Randall*, 357 U.S. 513 (1958) .............................................................. 9

*Sweeney v. Univ. of CO Hosp. Auth.*, No. 23-CV-02451 (D. Colo. July 12, 2024) 15

*Terry v. Adams,* 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953). .................. 10

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ................................................. 17

**Statutes**

10 U.S.C. § 980 ................................................................................................. 8, 11

21 U.S.C. § 352 ..................................................................................................... 15

21 U.S.C. § 360bbb-3 ......................................................................................... 6, 18

21 U.S.C. § 360bbb-3(a)(2)(A) .............................................................................. 16

21 U.S.C. § 360bbb-3(b)(2)(B) .............................................................................. 16

21 U.S.C. § 360bbb-3(l) ........................................................................................ 20

42 U.S.C. § 1983 ............................................................................................. 11, 12

42 U.S.C. § 262(a) ................................................................................................. 7

**Regulations**

45 C.F.R. § 46.116 ............................................................................................. 7, 11

45 C.F.R. § 46.122 ................................................................................................ 17

## STATEMENT OF ISSUES TO MERIT *EN BANC* CONSIDERATION

1. Can an Article III court judicially change a drug's classification?

2. Can an Article III court strip the Health and Human Services Secretary ("Secretary") of his discretionary authority and allow persons executing the Secretary's authorization conditions under 21 U.S.C. § 360bbb-3 to mandate that which Congress expressly prohibits?

3. Is it proper to reframe Plaintiffs' allegations *by accepting Defendants' allegations as true* on a Rule 12(b)(6) motion to dismiss?


## SUMMARY OF FACTS RELEVANT TO REHEARING

The panel decision created a loophole in the EUA Statute, the PREP Act, and the Constitution when it allowed a private party to do with government-owned investigational drugs what the government could not—mandate their use and penalize refusal. Plaintiffs are healthcare workers licensed by Texas and former employees of Shriners Hospitals for Children ("Shriners"), a state-licensed medical facility.

In October 2020, the Executive Branch of the U.S. Government ("USG") purchased all COVID-19 drugs and retained ownership "until administered to the recipient." (ROA.538). The HHS Secretary classified the drugs as investigational and immunized them from liability under the PREP Act. The USG informed the

nation that the drugs were not licensed vaccines but were "investigational vaccine[s] not licensed for any indication" (ROA.542), which means they were under investigation to become a vaccine within the meaning of 42 U.S.C. § 262(a). Responding to the pandemic, the USG established the CDC COVID-19 Vaccination Program ("CDC Program") as an emergency *public function to distribute the drugs* through volunteer states and only under voluntary conditions. (ROA.190-195).

The CDC Program exclusively relied on federally owned drugs not licensed for any indication and subject to research conditions. Potential recipients needed to decide whether to volunteer as human subjects in federally funded research, assume significant risks to their health, safety, and legal rights, publicly disclose private health information to undisclosed parties for unspecified purposes and durations, permit unknown entities to monitor them for adverse reactions, and allow collected data to be reported to unidentified recipients. Moreover, under the PREP Act's shield from liability, participants are required to voluntarily relinquish their Fourteenth Amendment due process rights if harmed by the drugs.(ROA.553)

Because the drugs were investigational, the USG was bound to comply with 45 C.F.R. § 46.116, the Belmont Report, Article VII of the ICCPR Treaty, the PREP Act's express preemption clause, and the Federal Wide Assurance program, meaning the USG was required to obtain an individual's legally effective informed consent— a legal standard unique to investigational drugs and not to vaccines. (ROA.540-544).

This meant the federal government ("USG") could not pressure an individual to use the drugs nor punish them for refusing because Congress enacted the 1974 National Research Act, after Senator Edward Kennedy exposed human rights atrocities committed by the USG against the poor, minorities, women, the uneducated, and the mentally disabled. Additionally, Plaintiffs alleged that the drugs were purchased using DoD funding, requiring the USG to obtain individuals' informed consent pursuant to 10 U.S.C. § 980.

The legally effective informed consent standard is enforced through the Federal Wide Assurance ("FWA") program. It requires its estimated 30,000 authorized agents to provide written assurance to the USG that they will never pressure an individual to use an investigational drug nor punish them for refusing. All drugs under the CDC Program were subject to FWA program requirements. (ROA.541)

In 2020, the USG recruited Texas to assist in administering the CDC Program's EUA/PREP Act investigational drugs as an emergency *public function*. Texas agreed to obtain legally effective informed consent on behalf of the USG and to recruit normally private entities to act under color of law to fulfill this *governmental function* under the CDC Program. Texas operates under FWA00028877 when involving humans with investigational medical treatments.

Texas recruited Shriners, which voluntarily agreed to abide by the laws set forth in the CDC COVID-19 Vaccination Program Provider Agreement ("Provider Agreement"), including the EUA Statute and PREP Act, and their separate obligations under Shriners' FWA (FWA00025698) and IRB programs, thereby completely prohibiting Shriners from pressuring any individual, employee or not, to use EUA/PREP Act investigational drugs, an allegation completely ignored by the district court and the panel, which is the gravamen of Plaintiffs' case. (ROA.550, ¶¶ 78-80). Although Shriners had discretionary authority to offer the drugs to individuals, it was bound to comply with the terms and conditions established by Texas HHS Commissioner Cecile Erwin Young under the CDC Program and only act as the State allowed. When Shriners interacted with anyone, employee or non-employee, regarding the CDC Program's drugs, it was acting on the State's behalf. When it penalized Plaintiffs for refusing, it breached the governmental duties owed by the USG and Texas under the CDC Program and applicable laws.

Texas unconstitutionally used Shriners as a "procedural device" to "produce a result which the State could not command directly." *Speiser v. Randall*, 357 U.S. 513 (1958). It is "axiomatic that a state may not induce, encourage or promote private persons to accomplish what it is constitutionally forbidden to accomplish." *City of Richmond v. J.A. Croson Co*., 488 U.S. 469 (1989). Neither the USG nor Texas could require Plaintiffs to participate in the CDC Program, implicating several

rights under the Fourteenth Amendment. "If a state government must satisfy certain constitutional obligations when carrying out its functions, it cannot avoid those obligations and deprive individuals of their constitutionally protected rights by delegating governmental functions to the private sector. *See Terry v. Adams,* 345 U.S. 461, 73 S. Ct. 809, 97 L. Ed. 1152 (1953). The delegation of the function must carry with it a delegation of constitutional responsibilities." *Giron v. Corrections Corp. of America*, 14 F. Supp. 2d 1245 (D.N.M. 1998), *affirmed in part, reversed in part, on other grounds*, 191 F.3d 1281 (10th Cir. 1999).

Ms. Young's ministerial duties included educating the public on the distinction between FDA emergency use authorization (EUA) and FDA licensure, recruiting entities to administer the drugs in compliance with the Provider Agreement (which was incorporated into state policy), and ensuring compliance with federal guidance and investigational drug laws among its recruited agents. (ROA.545-549).

Shriners was required to comply with all EUAs and applicable laws, ensuring potential recipients were informed of the drug's risks, benefits, alternatives, and their right to refuse in accordance with the legally effective informed consent standard, with which they are intimately familiar. These conditions provide Plaintiffs with "rules of understanding" (*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)) of expected benefits that become property rights, subject to the Due Process

clause, enforceable under 42 U.S.C. § 1983 pursuant to *Dennis v. Higgins*, 498 U.S. 439 (1991).

Plaintiffs alleged that, under the CDC Program, obtaining legally effective informed consent was *a governmental function* delegated to Texas, which relied on Shriners to perform this duty. (ROA.717). However, in 2021, Shriners penalized employees, contract workers, volunteers, and vendors who refused to be injected with the program's investigational drugs, thereby nullifying informed consent. Contrary to Defendants' claims and the panel's ruling, the challenged conduct is not an employer vaccination policy but a breach of the Provider Agreement that deprived individuals of their constitutional right to bodily autonomy and their right to legally effective informed consent. (ROA.600)

Shriners eventually terminated Plaintiffs when they refused to surrender their right to refuse the investigational drugs, violating Plaintiffs' rights under the CDC Program; rights Shriners promised to protect on behalf of the State for Plaintiffs' benefit.

Plaintiffs hold constitutional, statutory, and programmatic rights to refuse investigational drugs. The duty to obtain informed consent means Congress first conferred upon Plaintiffs the property right to give it. The rights described under the CDC Program, EUA Statute, 45 C.F.R. § 46.116, and 10 U.S.C. § 980 are

enforceable under 42 U.S.C. § 1983 pursuant to *Health and Hospital Corporation of Marion Cty. v. Talevski*, 599 U.S. 166 (2023) and *Dennis, supra.*

## STATEMENT OF THE COURSE OF PROCEEDINGS
## AND DISPOSITION OF THE CASE

**District-court proceedings.** The court erred by disregarding Plaintiffs' allegations that the drugs were designated as investigational by the Executive Branch and accepting Defendants' allegations that the drugs were vaccines. This ruling, a clear misapplication of law, violated the separation of powers doctrine by changing the drugs' assigned legal status. Furthermore, the court failed to address any counts or acknowledge the existence of the CDC Program, thereby denying Plaintiffs their Fourteenth Amendment due process rights. (ROA.818-828).

**Panel proceedings:** Plaintiffs appealed to this Court, arguing that the district court mischaracterized their claims and improperly designated the investigational drugs as vaccines. The panel's decision relegated Plaintiffs' allegations to a mere footnote (Panel Op. 4, FN. No. 3), while upholding the district court's ruling. By doing so, the panel failed to accept as true Plaintiffs' factual allegations regarding the CDC Program and erroneously changed the drugs' classification, thereby usurping the power of the HHS Secretary. The ruling effectively legalized Shriners' illegal conduct and denied Plaintiffs their right to "present [their] case and have its merits fairly judged," as established in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982). (Panel Op.)

## ARGUMENT AND AUTHORITIES

### Reasons for Granting *En Banc* Review

**A. This case before this Court presents fundamental questions about who decides to assign drugs their legal indications and who authorizes the conditions under which investigational drugs will be introduced into commerce—the Executive Branch, through Article II, or the Judicial Branch, through judicial preference. The Constitution supplies a clear answer: the Executive Branch.**

In *Clinton v. City of New York*, 524 U.S. 417, 449 (1998), Justice Kennedy concurred, "Failure of political will does not justify unconstitutional remedies," for "the Constitution's structure requires a stability which transcends the convenience of the moment." He further cautioned, "Liberty is always at stake when one or more of the branches seek to transgress the separation of powers," and "abdication of responsibility is not part of the constitutional design." *Id*.

Courts are increasingly substituting their preferences for Executive Branch determinations, undermining this constitutional framework.

For example, in *Roberts v. Shriners Hospitals for Children*, No. 2:23-cv-0295 (E.D. Wash. Feb. 8, 2024), Shriners argued that the Pfizer-BioNTech COVID-19 drug was FDA-approved, not investigational, directly contradicting the Secretary, despite Plaintiffs attaching a judicially noticeable document from the Secretary establishing Shriners' ministerial duty to "conspicuously" state that the drug "has not been approved or licensed by FDA." *Id*. Despite this unambiguous Executive

directive, *Roberts* held that the drug was "effectively FDA approved"—a legally meaningless phrase—and dismissed the case under Rule 12(b)(6).

Similarly, in *Brock v. City of Bellingham*, No. 2:24-cv-850, 2025 WL 254725 (W.D. Wash. Jan. 21, 2025), the city claimed Pfizer-BioNTech COVID-19 Vaccine was not investigational, contradicting judicially noticeable documents confirming Pfizer's obligation to submit data to investigational new drug application 19736. Yet, *Brock* ruled that "the Pfizer vaccine was no longer (if it had been before) an 'investigational drug,'" dismissing the case under Rule 12(b)(6), despite Plaintiffs' allegations and the Secretary's notices from 2020–2024 affirming the drug's investigational status, which still holds true as of the filing of this petition.

In *Boysen v. PeaceHealth*, No. 6:23-CV-01229-AA, 2024 WL 3888682 (D. Or. Aug. 19, 2024), Plaintiffs submitted the historical and legislative record, dating to 1938, establishing Congress's delegation to the FDA to determine a drug's safety, efficacy, and market conditions. Nevertheless, *Boysen* held that such determinations rest on the "common belief of the people of the state," not the FDA, effectively nullifying federal authority.

In *Sweeney v. Univ. of Colorado Hosp. Auth.*, No. 23-CV-02451-NYW-MDB, 2024 WL 3713835 (D. Colo. July 12, 2024), the court acknowledged the drugs were investigational and that State defendants, bound by the Provider Agreement and FWA contracts, promised not to pressure individuals to use investigational

EUA/PREP Act drugs. Yet, the court ruled "that states may constitutionally impose a vaccination requirement," when the only available drugs were EUA/PREP Act investigational drugs, as supported by Plaintiffs' allegations and FDA documents.

In the instant action, the district court went further. Plaintiffs alleged that the Secretary classified the drugs as "investigational vaccine[s] not licensed for any indication," (ROA.542) that Pfizer-BioNTech COVID-19 Vaccine was under investigational new drug application 19736 (ROA.739, Letter "G"), that Shriners was under a ministerial duty to "conspicuously" state the drug "has not been approved or licensed by the FDA" (ROA.741), and that misrepresenting an investigational drug as an FDA-licensed vaccine constitutes the criminal act of misbranding 21 U.S.C. § 352. (ROA.552,760,761). Nonetheless, the panel affirmed the district court's ruling that Shriners, a private employer, was not required to give Plaintiffs the "option to refuse the vaccine." (Panel Op. 5). The keyword is "the," as the panel did not identify "the" vaccine. An investigational drug cannot be a vaccine and *vice versa* because a vaccine must be assigned a legal indication, which an investigational drug never has. Notably, the panel claims the FDA "had not yet fully approved the vaccines" (Panel Op. 2), which is an odd statement because a drug is approved or it is not; there is no sliding scale on approval. However, the panel affirmed that the drugs are not approved, yet it still assigned them the legal indication as a vaccine, contradicting the Executive Branch.

The panel's ruling is flawed for several reasons. First, it permitted Shriners to hijack Plaintiffs' Complaint and challenge the Secretary's classification of the drugs, bypassing the Administrative Procedure Act's designated process for such challenges. Second, in the instant action, under 21 U.S.C. § 360bbb-3(a)(2)(A), an emergency use authorization (EUA) can only be issued to a drug that is *not* licensed as a vaccine for Covid. Thus, every EUA drug is not licensed for the emergency use. None of the available Covid drugs were licensed for Covid, and the August 23, 2021, FDA-licensing of COMIRNATY® did not change the fact that Pfizer-BioNTech COVID-19 Vaccine was at all times investigational.

The panel ruling conflicts with ongoing EUAs, which maintain the drugs as investigational and not licensed as vaccines. This creates a legal paradox: to align with the court's ruling, the Executive Branch would need to terminate all EUAs, assign the drugs a legal indication prematurely—before clinical trials are complete— and dispose of all EUA-labeled products under 21 U.S.C. § 360bbb-3(b)(2)(B). Failure to do so could render the Secretary vulnerable to legal actions for exceeding his authority.

However, the structure of the Constitution does not permit the Judicial Branch to execute the laws; it follows that the judiciary cannot approve a drug for a legal indication expressly denied by the Executive Branch. "The Constitution prohibits

one branch from encroaching on the central prerogatives of another." *Miller v. French*, 530 U.S. 327 (2000).

Congress subjects the entire federal budget to the legally effective informed consent standard when involving humans with investigational drugs. (45 C.F.R. § 46.122). However, this standard does not apply to licensed vaccines because licensed vaccines are not investigational. Therefore, the *en banc* Court should grant rehearing of the panel decision and rule that the drugs are investigational, not approved as vaccines, and subject to the informed consent standard, because to have two legal classifications for the same drug working concurrently only sows confusion in the federal scheme. The drugs are either vaccines or investigational drugs; they cannot be both.

An individual holds the fundamental right to refuse unwanted investigational medical treatments. *See Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 273 (1990); *Washington v. Glucksberg*, 521 U.S. 702 (1997); *Albright v. Oliver*, 510 U.S. 266, 272 (1994) stating that due process protections extend to bodily autonomy rights.

The court judicially assigning the drugs a legal indication as vaccines distorts reality by engaging in Article II powers, leading to absurd results and depriving Plaintiffs of their constitutional and federal rights without a fair hearing. Due to the Panel's ruling, the drugs hold two legally distinct federal frameworks:

investigational under the Executive Branch, subject to strict federal regulations, and vaccines under the Judicial Branch without a federal framework.

This Court should grant *en banc* review and hold: (1) "A district court abuses its discretion when it does not consider 'a relevant factor that should have been given significant weight.'" *PHH Mortgage Corp. v. Old Republic*, 80 F.4th 555 (5th Cir., Aug. 30, 2023), and the drug's classification is the gravamen of Plaintiffs' Complaint; (2) that a district court violates the separation of powers doctrine when it acts in a manner reserved for the Executive Branch such as changing a drug's classification; (3) a district court may never accept Defendant's version of facts on a Rule 12(b)(6) motion without it violating the pleading standard under *Twombly*, *supra*; (4) "[a] district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996); *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009)("[a] court abuses its discretion when its ruling is based on an erroneous view of the law.").

**B. The court's decision to strip the Secretary of the broad, exclusive discretionary authority granted under 21 U.S.C. § 360bbb-3 (the EUA Statute) and to permit Texas and Shriners to engage in conduct explicitly prohibited by Congress constitutes a legal error with profound societal consequences, warranting *en banc* review.**

The panel wrongly claimed that the statutory right to refuse an investigational drug under the EUA Statute is not a right that can be effectively exercised (Panel Op. 13 "purported right"), implying Congress didn't create it for Plaintiffs' benefit.

The right to refuse without consequence exists to protect an individual's fundamental right to bodily autonomy.

The panel also held that informed consent only applies between vaccine providers and patients. (Panel Op. 13). This ruling is incorrect because the statute doesn't include such limitations. It undermines the Secretary's authority to decide who informs people of their rights and who administers EUA drugs, imposes liability on those who previously administered shots without agreeing to the Secretary's conditions, and restricts the Secretary's flexibility in future emergencies to only those administering EUA drugs. The panel's misinterpretation of the statute infringes upon the Executive Branch's delegated authority from Congress and should be vacated by the *en banc* panel.

In this case, the Secretary appointed the Texas health agency as the "Emergency Response Stakeholder" (ROA.596) to ensure the Secretary's conditions were implemented across the state and to recruit vaccine providers who agreed to sign the Provider Agreement. (ROA.121) The agreement had to be signed by the organization's CEO, CMO, or other designated individuals who accepted responsibility. As a result, nurses at medical facilities were not responsible for fulfilling the Secretary's authorization conditions; that duty fell to Ms. Young and Shriners' executive leadership.

The panel implies that the statute provides private employers the right to apply consequences. (Panel Op. 14). That is an erroneous application of statutory construction because 21 U.S.C. § 360bbb-3(l) states that the Secretary has no "authority to require any person to carry out any activity that becomes lawful pursuant to an authorization under this section," which includes the activity of receiving the drugs. The Supremacy Clause dictates that if the EUA Statute expressly prohibits conduct, then neither the State nor its recruited agents may engage in that conduct.

Moreover, the panel ignored Plaintiffs' claims that the PREP Act's express preemption clause denies Texas and Shriners from issuing legal requirements that conflict with any requirement under the FDCA, which includes the option to refuse under the EUA Statute.

Finally, the panel held that Shriners did not have an obligation to give employees the option to refuse, (Panel Op. 5) and that Shriners did not require Plaintiffs to get the shot from them (Panel Op. 11) which means that Shriners could subject them to investigational drug use in violation of their FWA agreement. This statement nullifies the FWA program and the legally effective informed consent doctrine, regulating 30,000 federal contracts and the 600 billion dollar pharmaceutical industry.

## *En Banc* Review

Had the panel accepted Plaintiffs' allegations as true that the USG determined that the drugs were not vaccines, but instead were federally owned EUA/PREP Act investigational drugs available exclusively through the CDC Program, requiring the USG to obtain Plaintiffs' legally effective informed consent, and that the USG delegated that function to Texas, which delegated that function to Shriners, but Shriners issued a policy under a State-enforced custom of penalizing the right to refuse, then the panel could not have affirmed dismissal under Rule 12(b)(6). Moreover, the panel could not have ruled that Shriners' conduct was "not unlawful" if it accepted Plaintiffs' allegation as true that Shriners' involvement under the CDC Program was subject to FWA requirements. Additionally, if the panel accepted as true Plaintiffs allegations, it could not have ruled that Shriners Defendants were not subject to personal jurisdiction since they promised to help Texas administer the drugs to Texans but violated the right of Texans when punishing Texans for exercising programmatic rights they promised to protect on the state's behalf, which if true, means they committed a tort in Texas and therefore are subject to personal jurisdiction by the district court. *Evergreen Media Holdings, LLC v. Safran Co*., 68 F. Supp. 3d 664, 676 (S.D. Tex. 2014).

Finally, the panel held that Plaintiffs did not "request such relief from the district court," to mean they did not request leave to amend. Plaintiffs were not afforded an

opportunity to amend their Complaint after the court dismissed the case with prejudice.

When Judge Sullivan vacated the DoD's investigational drug mandate for civilians and service members he stated that "The Court is persuaded that the right to bodily integrity and the importance of complying with legal requirements, even in the face of requirements that may potentially be inconvenient or burdensome, are among the highest public policy concerns one could articulate." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004). He ruled, "Accordingly, the involuntary anthrax vaccination program, as applied to all persons, is rendered illegal absent informed consent or a Presidential waiver." Notably, Congress only authorizes the President to issue a waiver of informed consent for military members relating to investigational drugs. No legal conditions exist under which a government can waive Plaintiffs' legally effective informed consent rights, nor can the USG use Texas to use Shriners to do the dirty deed for them.

This *en banc* review petition should be granted to protect the integrity of this Court and secure Plaintiffs' Fourteenth Amendment Due Process rights to have their cases fairly judged. Ensuring society is not subjected to investigational drugs is one of the highest public policy concerns this Court could articulate.

## CONCLUSION

For the reasons set forth above, Plaintiffs/Appellants respectfully request that

their Petition for Rehearing *En Banc* be granted.

Dated: April 16, 2025.

Respectfully Submitted,

**SCHEXNAYDRE LAW FIRM**

BY: ***s/ David J. Schexnaydre***
DAVID J. SCHEXNAYDRE, T.A. (#21073)
2895 Highway 190 • Suite 212
Mandeville, Louisiana 70471
Telephone: (985) 292-2020
Fax: (985) 235-1089
Email: david@schexnaydre.com
Counsel for Plaintiffs-Appellants

## CERTIFICATE OF SERVICE

I certify that on April 16, 2025, I presented a copy of the foregoing pleading to the Clerk of Court for filing and uploading to the CM/ECF system, which will send separately notification of such filing to all counsel of record:

Dan Patton and Mike Burke of Scott Patton, PC

William H. Farrell of the Office of the Attorney General

Copies will be sent via email to:

Mr. Patton at dpatton@scottpattonlaw.com

Mr. Burke at mburke@scottpattonlaw.com

Mr. Farrell at biff.farrell@oag.texas.gov

*/s/ David Joseph Schexnaydre*
DAVID JOSEPH SCHEXNAYDRE


## CERTIFICATE OF COMPLIANCE WITH RULE 32(b)(2)

This brief complies with the typeface requirements of Fed. R. App. P. 32(b)(2) and the type style requirements of Fed. R. App. P. 32(a)(6) because, excluding the parts exempted by FRAP 32(f), this document contains 3,873 words.

This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Mac, Version 16.78 in Times New Roman 14 point font for the body and 12 point font for footnotes.

Dated: April 16, 2025.

*/s/ David Joseph Schexnaydre*
DAVID JOSEPH SCHEXNAYDRE

# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2025

Lyle W. Cayce
Clerk

No. 24-40436

JERI PEARSON; ELIZABETH KLEM; BEN HOMAN; ROB FOWLER,

*Plaintiffs—Appellants,*

*versus*

SHRINERS HOSPITALS FOR CHILDREN, INCORPORATED; SHRINERS HOSPITALS FOR CHILDREN, TEXAS; BEVERLY BOKOVITZ; FRANCES FARLEY; JERRY GANTT; JOHN MCCABE; PHILLIP GRADY; CECILE ERWIN YOUNG,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:23-CV-387

---

Before WIENER, STEWART, and SOUTHWICK, *Circuit Judges*.

CARL E. STEWART, *Circuit Judge*:

Plaintiffs-Appellants (the "Former Employees") were terminated from Shriners Hospitals for Children for refusing to get a COVID-19 vaccination. They then sued their private employer, its agents, and the Executive Commissioner of Texas Health and Human Services, for violating

their alleged right to refuse the vaccine.[1] The Former Employees asserted various 42 U.S.C. § 1983 claims, a claim directly under the statute permitting the vaccine's Emergency Use Authorization (the "EUA Statute"), and various Texas state-law claims. We AFFIRM the district court's judgment dismissing with prejudice the Former Employees' federal-law claims. We also AFFIRM the district court's judgment dismissing the Former Employees' state-law claims with prejudice for lack of supplemental jurisdiction, however, we MODIFY the judgment to reflect that it is without prejudice and AFFIRM as MODIFIED.

## I.

Nearly a year after COVID-19 first reached the United States, the Secretary of Health and Human Services ("HHS") issued EUAs for vaccines developed by Pfizer, Moderna, and Johnson & Johnson.[2] Because of the short timeline, the Food and Drug Administration (the "FDA") had not yet fully approved the vaccines. To streamline and organize the national vaccination effort, the federal government purchased all the available COVID-19 vaccines in the United States. Those vaccines were available exclusively through the federal COVID-19 vaccination program, in coordination with state and local governments.

Under this arrangement, states were responsible for "ensur[ing] the COVID-19 Vaccination Program [was] implemented throughout the

---

[1] Throughout this opinion we refer to the Defendants–Appellants in three groups: (1) Shriners Hospitals for Children and its wholly owned subsidiary Shriners Hospitals for Children, Texas, as "Shriners"; (2) Beverly Bokovitz, Frances Farley, Jerry Gantt, John McCabe, and Phillip Grady as the "Agents"; and (3) the Executive Commissioner of Texas Health and Human Services as the "Commissioner."

[2] Because this case was dismissed on a motion to dismiss, we draw all facts from the Former Employees' amended complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

jurisdiction in adherence with federal guidance and requirements." The organizations that administered vaccines to patients had similar obligations to "comply with all applicable requirements as set forth by the [FDA], including but not limited to requirements in any EUA that covers COVID-19 Vaccine[s]." For example, before administering the vaccine, providers had to "provide an approved [EUA] fact sheet or vaccine information statement (VIS) . . . to each vaccine recipient." As required under the EUA Statute, those fact sheets contained information that "informed" patients "of the option to accept or refuse administration of the product, [and] of the consequences, if any, of refusing administration of the product." *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

Shriners was one vaccine provider. As a private nonprofit corporation, it operates an international network of children's hospitals. The Former Employees worked at one of those hospitals in Galveston, Texas. Shriners is incorporated in Colorado and headquartered in Florida. The two Agents who signed the vaccine provider agreement—Beverly Bokovitz and Frances Farley—were based outside of Texas.

In November 2021, Shriners adopted a companywide policy that required its employees to be vaccinated against COVID-19. The policy permitted employees to get vaccinated through Shriners or independent entities. The three Agents who signed the policy—Jerry Gantt, John McCabe, and Phillip Grady—were also based outside of Texas. The Former Employees refused to get vaccinated, so Shriners terminated their employment.

In December 2023, nearly two years after the Former Employees were terminated, they sued Shriners, its Agents, and the Commissioner. They

raised six § 1983 claims,[3] a standalone claim under the EUA Statute, and three Texas state-law claims.[4] The Former Employees argued that, Shriners—allegedly a state actor by virtue of the vaccine provider agreement—and its Agents violated their right to refuse the vaccine without consequences through the mandatory vaccination policy. They also argued that the Commissioner, for her part, allegedly violated the same right by failing to stop Shriners. They posited that she breached her duty to ensure that vaccine providers within Texas did not impose a burden on their choice to refuse the vaccine.

Shriners, its Agents, and the Commissioner moved to dismiss the Former Employees' claims. Shriners and its Agents argued that (1) there was no personal jurisdiction over the Agents, (2) the § 1983 claims were time barred, (3) there was no state action as required under § 1983, (4) none of the nonconstitutional provisions confer private rights of action under § 1983 or under the provisions themselves, (5) each claim failed on its merits, (6) Shriners and its Agents are entitled to qualified immunity, and (7) the district court should decline to exercise supplemental jurisdiction over the state-law claims.[5]

---

[3] Under § 1983, the Former Employees alleged violations of their (1) substantive due process right to refuse a vaccine; (2) "privacy rights" under the Fourteenth Amendment; (3) equal protection right not to be classified on the basis of vaccination status; (4) procedural due process right to a hearing prior to depriving them of their right to refuse a vaccine without penalty; (5) right to be free from unconstitutional conditions; (6) right to refuse a vaccine under various statutes, treaties, and administrative actions.

[4] Under Texas state law, the Former Employees alleged (1) breach of contract as a third-party beneficiary to the vaccine provider agreement between Shriners and the federal government; (2) wrongful termination, and (3) intentional infliction of emotional distress.

[5] Shriners and its Agents do not renew on appeal their arguments that the Former Employees' § 1983 claims are time barred or that they are entitled to qualified immunity. Thus, we address them no further.

No. 24-40436

The Commissioner, for her part, argued that (1) the Former Employees lacked standing to sue her on traceability grounds,[6] (2) she was not personally involved in creating the policy or terminating the Former Employees, as required under § 1983, (3) none of the nonconstitutional provisions under which the Former Employees brought claims conferred private rights of action, (4) each claim failed on its merits, and (5) she is entitled to qualified immunity because the Former Employees have failed to cite a clearly established right.

The district court agreed with the defendants and dismissed all the Former Employees' claims. First, it determined that there was no personal jurisdiction over the Agents because they were protected by the fiduciary shield doctrine. Second, it found no state action to support the § 1983 claims. It noted that even assuming that Shriners was a state actor in its capacity as vaccine provider, it issued the mandatory vaccination policy in its capacity as a private employer. Third, the court dismissed the Former Employees' standalone claim under the EUA Statute because Shriners had no obligation as an employer, as opposed to as a vaccine provider, to give them the option to refuse the vaccine. Fourth, the court dismissed the Former Employees' claims against the Commissioner because she could not be liable for failing to correct Shriners's alleged misconduct when it was not unlawful. Finally, the court dismissed the remaining state-law claims as a matter of discretion under

---

[6] The Commissioner does not renew this argument on appeal. We nonetheless address it due to our independent obligation to evaluate Article III standing. *See Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002).

the supplemental jurisdiction statute. *See* 28 U.S.C. § 1367(c)(3).[7] The Former Employees timely appealed.

## II.

"Personal jurisdiction is a question of law reviewed *de novo*." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) (emphasis added). Similarly, "[q]uestions of law relating to constitutional standing are reviewed *de novo*." *In re Deepwater Horizon*, 739 F.3d 790, 798 (5th Cir. 2014). We also "review *de novo* a dismissal under rule 12(b)(6), applying the same standards as did the district court." *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

"We review a district court's denial of leave to amend under Rule 15(a) for an abuse of discretion." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872 (5th Cir. 2000).

## III.

For reasons that we now discuss, the district court did not err in dismissing the Former Employees' claims against the Agents, Shriners, or the Commissioner. Respectively, it did not have personal jurisdiction over

---

[7] The Former Employees have not appealed the district court's decision declining to exercise supplemental jurisdiction over their state-law claims. We still note that "[a] district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all claims over which it has original jurisdiction." *McCreary v. Richardson*, 738 F.3d 651, 660-61 (5th Cir. 2013) (citing 28 U.S.C. § 1367(c)(3)). "When [it] exercises its discretion to dismiss state law claims," however, "it must do so without prejudice so that the plaintiff may refile in the appropriate state court." *Id.* (citing *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999)). Here, the district court dismissed the Former Employees' state-law claims with prejudice but should have done so without prejudice. *See id.* For that reason, we modify its judgment of dismissal as to those claims to be without prejudice and affirm as modified.

the Agents, Shriners was not a state actor when it implemented its mandatory vaccination policy, and the Commissioner was entitled to qualified immunity.

## A.

We start with the claims against the Agents. Because the Former Employees have failed to establish personal jurisdiction for these claims, they necessarily fail. *Sangha v. Navig8 ShipManagement Pvt. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

"When personal jurisdiction is challenged, the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)). A district court may rule on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, but if so, the plaintiff must establish "a *prima facie* case of personal jurisdiction." *Sangha*, 882 F.3d at 101 (citing *Quick Techs*, 313 F.3d at 343). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor." *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 546 (5th Cir. 1985).

A plaintiff establishes the requisite a *prima facie* case by showing that "the [forum] state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha*, 882 F.3d at 101 (citation omitted). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Due process requires that the defendant have 'minimum contacts' with the forum state . . . and that exercising jurisdiction is consistent with 'traditional notions of fair play and substantial

No. 24-40436

justice.'" *Id.* (quoting *Johnston*, 523 F.3d at 609); *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (stating the same).

"Minimum contacts" can give rise to specific jurisdiction. *Sangha*, 882 F.3d at 101 (citing *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)).[8] For out-of-state defendants, courts have specific jurisdiction "only if the cause of action asserted arises out of or is related to those contacts." *Id.* (emphasis omitted) (quoting *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016)). If the relevant claims are based on "intentional, and allegedly tortious[] actions," the defendant's out-of-state actions must have been "expressly aimed at" the forum state. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see Walden v. Fiore*, 571 U.S. 277, 288 n.7 (2014) (quoting the same).

"Each defendant's contacts with the forum [s]tate must be assessed individually." *Calder*, 465 U.S. at 790. Thus, plaintiffs may not aggregate defendants' forum contacts and may not establish personal jurisdiction without specifying who did what. *Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980); *see Head v. Las Vegas Sands, Ltd. Liab. Corp.*, 760 F. App'x 281, 284 (5th Cir. 2019) (unpublished) (requiring "plaintiffs to submit evidence supporting personal jurisdiction over each defendant without grouping them together").

The Former Employees failed to satisfy this standard for jurisdiction over the Agents. They allege that Shriners took several actions, but they only ascribed one to each Agent: Bokovitz and Farley signed the vaccination provider agreement, and Gantt, McCabe, and Grady signed the mandatory

---

[8] Because the Former Employees do not allege general jurisdiction over the Agents, we discuss it no further. *See Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 & n.4 (5th Cir. 2019) ("Arguments . . . *in favor* of jurisdiction . . . can be forfeited." (emphasis added)).

vaccination policy. The Agents' names appear nowhere else in the amended complaint.

Bokovitz's and Farley's acts—signing the vaccination provider agreement—are insufficient to support specific jurisdiction. Although these actions are relevant to the Former Employees' theory on why Shriners is a state actor, they have nothing to do with depriving the Former Employees of their alleged right to refuse vaccinations without consequences. They relate to Shriners's vaccine administration across the United States, not targeted toward Texas. Thus, their claims against Bokovitz and Farley based on that right do not "arise out of or relate to" the pair's "contacts" with Texas. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Bristol Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017)).

Likewise, Gantt's, McCabe's, and Grady's acts—signing Shriners's mandatory vaccination policy—are not sufficiently connected to Texas to support specific jurisdiction. These actions relate to the Former Employees' claims, but there is no indication that the mandatory vaccination policy was signed in Texas or otherwise focused on Texas. To the contrary, Shriners is an international entity with locations across the United States and Canada. And the policy appears to apply to all Shriners locations. Thus, it was not "expressly aimed at" Texas. *See Calder*, 465 U.S. at 790; *see also Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (holding that a defamatory online article "presumably directed at the entire world, or perhaps just concerned U.S. citizens," was "not directed specifically at Texas" for personal jurisdiction purposes).

No. 24-40436

Because the Former Employees do not allege acts by any of the Agents to establish a *prima facie* case for personal jurisdiction, the district court properly dismissed the claims against them. *See Sangha*, 882 F.3d at 101.[9]

**B.**

As stated, the Former Employees bring claims against Shriners under § 1983 and the EUA Statute. Both sets of claims fail.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "a court must accept as true all of the [factual] allegations contained in a complaint," the same is not true of "legal conclusions." *Id.*

**1.**

To bring a claim under § 1983, a plaintiff must first show state action. *Priester v. Lowndes Cnty.*, 354 F.3d 414, 421 (5th Cir. 2004); *see Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 n.2 (2001) ("If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for § 1983 purposes." (citation omitted)). "A private entity can qualify as a state actor in a few limited circumstances." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019). Those "includ[e], for example (i) when the private entity performs a traditional, exclusive public

_____

[9] The parties also disagree as to whether the district court erred by concluding that the fiduciary shield doctrine bars personal jurisdiction over the Agents. That doctrine, "if applicable, prevents the exercise of personal jurisdiction based solely on acts undertaken in a defendant's corporate capacity." *Savoie v. Pritchard*, 122 F.4th 185, 191 (5th Cir. 2024). Because we conclude that we lack personal jurisdiction over the Agents regardless of whether the doctrine applies, we do not analyze it any further.

function; (ii) when the government compels the private entity to take a particular action, or (iii) when the government acts jointly with the private entity." *Id.* (citations omitted). They also include (iv) "when the private entity is entwined with governmental policies, or when government is entwined in its management or control." *Brentwood Acad.*, 531 U.S. at 295 (cleaned up). "Deciding whether a deprivation of a protected right" falls within one of these categories "begins by identifying the specific conduct of which the plaintiff complains." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 550 (5th Cir. 2005) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999)). That is because a defendant "may be a state actor for some purposes but not for others." *Id.* (quoting *George v. Pacific-CSC Work Furlough*, 91 F.3d 1227, 1230 (9th Cir. 1996)).

For the Former Employees' claims, the relevant conduct is Shriners adopting and enforcing its mandatory vaccination policy. Under that policy, it terminated the Former Employees for refusing to get vaccinated. It expressly permitted employees to get vaccinated through Shriners or other entities. Thus, Shriners did not implicate its role administering COVID-19 vaccinations by requiring its employees to receive one. *See Cornish*, 402 F.3d at 550.[10]

A private organization requiring its employees to receive a vaccination is not state action. *See Halleck*, 587 U.S. at 809. First, imposing such a requirement is not a "power[] traditionally exclusively reserved to the State." *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). It is commonplace for companies—particularly hospitals—to place such mandates on their employees. *See Julapalli v. Boom*, No. 24-20276, 2025 WL

---

[10] We express no opinion regarding whether Shriners was a state actor in its role administering vaccines to its patients.

314123, at *3 (5th Cir. Jan. 28, 2025) (unpublished) (holding that a private hospital's mandatory vaccination policy was not a public function). Second, the Former Employees have not alleged evidence showing that Texas compelled Shriners to adopt the policy. *See Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982). Third, they have not alleged evidence showing that the policy constitutes joint action between Shriners and Texas. Joint action requires "an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Hernandez v. Causey*, 124 F.4th 325, 337 (5th Cir. 2024) (citation omitted). The Former Employees have alleged no such "conspiracy" to adopt the mandatory vaccination policy. *See id.* And fourth, they did not allege that Texas was "entwined" with Shriners's decision to adopt the policy. *See Brentwood Acad.*, 531 U.S. at 295. The Former Employees have not alleged that Texas had any "say" in the hospital's "internal decision making" or that it had a "role in enacting or enforcing" the policy. *See Rundus v. City of Dallas*, 634 F.3d 309, 314–15 (5th Cir. 2011).

Because the Former Employees have failed to allege that "the specific conduct of which [they] complain[]" is state action, their § 1983 claims fail. *See Cornish*, 402 F.3d at 550.

## 2.

The EUA Statute permits the HHS Secretary to authorize use of a "drug, device, or biological product intended for [such] use in an actual or potential emergency." 21 U.S.C. § 360bbb-3(a)(1). It also requires the Secretary to establish "[a]ppropriate conditions designed to ensure that individuals to whom the product is administered are informed . . . of the option to accept or refuse administration of the product." 21 U.S.C.

No. 24-40436

§ 360bbb-3(e)(1)(A)(ii)(III). The Former Employees read this language to expressly provide them with "the option to accept or refuse" the COVID-19 vaccine without penalty. *Id.* They argue that Shriners deprived them of this purported right when it terminated them.

It did not. The EUA Statute's "option . . . to refuse" is far narrower than the Former Employees suggest. *See id.* To start, they again conflate Shriners's role as a private employer with its role as a vaccine provider. The EUA Statute only concerns the latter. Even assuming it places duties on anyone other than the HHS Secretary, the provision at issue focuses on vaccine providers. *See id.* It expressly limits its scope to the "person who carries out" the "activity" of administering COVID-19 vaccines. *Id.* The Former Employees, by eliding this distinction, violate "a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *See West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (quotation omitted). Because the EUA Statute "does not apply at all" to those acting in their role as "private employers like the hospital in this case," Shriners did not violate it by terminating the Former Employees. *Bridges v. Houston Methodist Hosp.*, 543 F. Supp. 3d 525, 527 (S.D. Tex. 2021) (holding that a hospital did not violate the EUA Statute by adopting a mandatory COVID-19 vaccination policy on its employees because the statute "neither expands nor restricts the responsibilities of private employers"); *see Conner v. Kelly*, No. 23-11225, 2024 WL 3177782, at *3 (5th Cir. June 26, 2024) (unpublished) (holding the same when an airline adopted the same policy).

The EUA Statute's explicit focus on providing information to patients confirms this result. The provision at issue only requires vaccine providers to ensure that their patients are "informed" of their "option to

accept or refuse." 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).[11] It mentions no restriction on whether those providers can require that their own workforce be vaccinated. *See id.* Indeed, it expressly contemplates that individuals may face "consequences" for "refusing" the vaccine. *Id.* Thus, the "informational obligation" in the EUA Statute "falls short of expressing a clear congressional intent to supersede state regulation of private employment." *See Hughes v. Terminix Pest Control, Inc.*, No. 23-30617, 2024 WL 3440465, at *1 (5th Cir. July 17, 2024) (unpublished).

In sum, the Former Employees' reliance on the EUA Statute is misplaced. *See Bridges*, 543 F. Supp. 3d at 527; *Hughes*, 2024 WL 3440465, at *1. Thus, the district court did not err in dismissing their claim under that statute.[12]

## C.

The Former Employees raise the same set of claims against the Commissioner as against Shriners and its Agents. For the Commissioner, however, they allege a failure to intervene. Specifically, they allege that she failed to prevent Shriners from terminating their employment. Although the Former Employees had Article III standing to bring these claims, they nonetheless fail because the Commissioner is entitled to qualified immunity.

### 1.

To satisfy Article III standing, a plaintiff must show that (1) she has suffered an "injury in fact," (2) the injury "likely was caused or likely will be

---

[11] Shriners provided those to whom it administered COVID-19 vaccinations with a fact sheet detailing their "option . . . to refuse." *See* 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III).

[12] Given that Shriners did not violate the Former Employees' rights under the EUA Statute, we need not address whether that statute creates an implied private right of action.

caused" by the defendant, and (3) the injury is likely to be "redressed by the requested judicial relief." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up).

Only the causation element is in question for the claims against the Commissioner.[13] To satisfy that element, "the links in the chain of causation, must not be too speculative or too attenuated." *Hippocratic Med.*, 602 U.S. at 383 (cleaned up); *see Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct."). The chain is impermissibly speculative or attenuated when "it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *Hippocratic Med.*, 602 U.S. at 383.

For the Commissioner, it is "sufficiently predictable" what would have occurred if she acted as the Former Employees wanted. *See id.* If she had stopped Shriners from enforcing its mandatory vaccination policy, the Former Employees would not have been terminated. Thus, her inaction is not "too speculative or too attenuated" to be fairly traceable to their injury. *See id.* at 380. They therefore have standing to sue her. *See Hippocratic Med.*, 602 U.S. at 380.

---

[13] The Former Employees have pleaded an injury in fact due to their termination from employment at Shriners. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). They have pleaded redressability due to seeking monetary damages from the Commissioner for her failure to fulfill her alleged duty to intervene and stop Shriners from violating their right to refuse the COVID-19 vaccine. *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976).

No. 24-40436

**2.**

Nonetheless, the Commissioner is entitled to qualified immunity because the Former Employees' claims against her are not based on clearly established law. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity bars suit against state officials in their individual capacity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* An official is only entitled to qualified immunity if she "performs non-ministerial acts within the boundaries of h[er] official capacity." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). "Once a public official raises the defense of qualified immunity, the burden rests on the plaintiff to rebut it." *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

The Former Employees have failed to meet that standard. *See id.* They contend that the Commissioner is not entitled to qualified immunity because she acted without authority by willfully failing to perform ministerial duties. Thus, their claims against her appear to be based on a failure-to-intervene theory that resembles bystander liability. We have recently held, however, that federal officers are entitled to qualified immunity when it is unclear if they had a duty to intervene. *See Diaz v. Cantu*, 123 F.4th 736, 750 (5th Cir. 2024). As we explained in *Cantu*, bystander liability has not been extended beyond the law enforcement context. *See id.* The Former Employees have similarly pointed to no such caselaw here. Thus, they have failed to demonstrate that they had a clearly established right to have the Commissioner intervene and prevent Shriners from terminating their employment. *See Zarnow*, 500 F.3d at 407.

No. 24-40436

Because the Commissioner is entitled to qualified immunity, the district court did not err in dismissing the Former Employees' claims against her. *See Pearson*, 555 U.S. at 231.

## IV.

In the final paragraph of their reply brief, the Former Employees argue for the first time that the district court should have either dismissed their claims without prejudice or allowed them leave to amend their complaint. They provide no analysis beyond quoting a single unpublished case stating that it is dispreferred to dismiss a suit with prejudice without providing an opportunity to amend. *See Shah v. Novelis*, No. 23-40231, 2024 WL 1739753, at *3 (5th Cir. Apr. 23, 2024) (unpublished). They did not request such relief from the district court.

We conclude that the Former Employees have forfeited this issue. *See Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are [forfeited]."); *United States v. Bennett*, 874 F.3d 236, 243 n.9 (5th Cir. 2017) (holding that a "conclusory assertion" constitutes "inadequate briefing" to preserve an argument for review); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("[A]n issue will not be addressed when raised for the first time on appeal unless it is a purely legal matter and failure to consider the issue will result in a miscarriage of justice." (citation omitted)).[14]

---

[14] Even so, the case that the Former Employees cite is inapposite. It concerns the standard for dismissal with prejudice under Rule 4(m) as a sanction for a plaintiff's delay or misconduct. *See Shah*, 2024 WL 1739753, at *3. The legal standard under that rule is different than under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *See Stripling*, 234 F.3d at 872–73 (holding that, in the 12(b)(6) context, "[i]t is within the district court's discretion to deny a motion to amend if it is futile").

No. 24-40436

## V.

For the foregoing reasons, we AFFIRM the district court's judgment dismissing with prejudice the Former Employees' federal-law claims. We also AFFIRM the district court's judgment dismissing the Former Employees' state-law claims with prejudice for lack of supplemental jurisdiction, however, we MODIFY the judgment to reflect that it is without prejudice and AFFIRM as MODIFIED.